UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MORAD JAJATI,

                Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

                Defendant.

**MEMORANDUM & ORDER**
22-CV-07676 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Morad Jajati has sued Defendant JPMorgan Chase Bank, N.A. ("Chase") for negligence and gross negligence under New York law related to the execution of two wire transfers from Plaintiff's Chase account. ECF No. 1-1 (Complaint). Plaintiff contends that he was the victim of several cryptocurrency fraudulent schemes and that Defendant failed to take appropriate action to help him recoup the wire transfer amounts involved in those schemes. Plaintiff does not contend that Defendant was in any way involved in the scams that led him to request the wire transfers. Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 15-1 (Motion to Dismiss). For the reasons set forth herein, the motion is granted.

**FACTUAL BACKGROUND**[1]

    Plaintiff has been a customer of Chase since 2010. ECF No. 1-1 ¶ 6. In November 2021, he was contacted by a cryptocurrency platform referred to as YiBit about making investments in

---

[1] The factual background is derived from the allegations in the Complaint, which the Court accepts as true when considering a motion to dismiss. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).

two companies – OTO Global LLC ("OTO") and Inversiones Feduro 2018 LLC ("Inversiones"). *Id.* ¶¶ 7, 17.  The OTO investment was in the amount of $250,000, *id.* ¶ 8, and the Inversiones investment was in the amount of $100,000, *id.* ¶ 18.  Thereafter, on November 22, 2021, Plaintiff "authorized the transfer" by wire of $100,000 from his account at Chase to an account held at Chase by Inversiones.  *Id.* ¶ 19.  About one week later, on November 30, 2021, Plaintiff again "authorized the transfer" by wire of $250,000 from his account at Chase to an account held at Chase by OTO.  *Id.* ¶ 9.

After discovering about a month later that the investments were part of a fraudulent scheme, Plaintiff contacted Chase on December 21, 2021, to advise it of the fraud and to request that Chase commence an investigation.  *Id.* ¶¶ 11, 21.  According to Plaintiff, Chase told him that it would commence an investigation and that the accounts of OTO and Inversiones "would be frozen pending the investigation."  *Id.* ¶¶ 13, 23.  Plaintiff also advised Chase that he had lodged a complaint about the fraud with the FBI.  *Id.* ¶¶ 14, 24.

Plaintiff asserts two causes of action against Defendant.  He alleges that Defendant's behavior in releasing the money he transferred while on notice of the fraud Plaintiff had suffered was both grossly negligent and negligent and caused Plaintiff to suffer damages.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d

---

[2]     Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' . . . complaint, which are accepted as true." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "However, the court may permissibly consider extrinsic materials where such are incorporated by reference or where a document is one 'upon which the complaint *solely* relies and which is *integral to the complaint.*'" *Pincover v. J.P. Morgan Chase Bank N.A.*, No. 21-cv-3524, 2022 WL 864246, at *4 (S.D.N.Y. Mar. 22, 2022) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)) (emphasis in original). While the Court must draw all reasonable inferences in favor of the non-moving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendant argues that Plaintiff's common law claims for negligence and gross negligence should be dismissed because they are preempted by Article 4-A of the New York Uniform Commercial Code ("U.C.C."). ECF No. 15-1 at 5–11. The gravamen of Defendant's motion is that Chase complied with its obligations under the U.C.C. when it faithfully executed two wire instructions authorized[3] by Plaintiff and, as such, Defendant cannot be liable for following Plaintiff's instructions. *Id*. Defendant further argues that the claims fail because they are precluded by the Wire Transfer Agreements that Plaintiff executed before each wire transfer instruction was fulfilled. *Id*. at 11–13.

---

[3] Plaintiff concedes that he authorized both wire transfers. ECF No. 1-1 ¶¶ 9, 19; *see also* ECF No. 15-5 (Plaintiff's Opposition Brief) at 4 ("The Plaintiff concedes that the Wire Transfers were authorized in November 2021.").

3

...

**I.      Extrinsic Materials**

Prior to discussing the substance of Defendant's motion, the Court must first determine whether the extrinsic materials Defendant submitted in support of its motion are cognizable at this stage of the litigation.  In reviewing a motion to dismiss, a court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Benny v. City of Long Beach*, No. 20-cv-1908, 2021 WL 4340789, at *10 (E.D.N.Y. Sept. 23, 2021).  The extrinsic materials Defendant asks the Court to consider are the Wire Transfer Outgoing Requests and Wire Transfer Agreements that Plaintiff agreed to on November 22 and 30, 2021, before the wire transfers at issue were executed.  ECF No. 15-3 (Exhibit 1 to Motion to Dismiss).  While Plaintiff does not explicitly reference these documents in the Complaint, there is no question that these documents are "integral to the complaint" because the transactions at issue here would not have occurred but for Plaintiff's execution of those documents. *See Strock*, 982 F.3d at 63.  Moreover, Plaintiff does not challenge the authenticity of those documents, nor does he challenge that they are the agreements that control the two wire transfers at issue in the Complaint.  ECF No. 15-5 at 6.  Not only is there no challenge to the centrality of these documents to the Complaint, but Plaintiff's opposition brief surprisingly fails to address in any fashion Defendant's argument that the claims are barred by these agreements. Accordingly, the Court will consider the Wire Transfer Outgoing Requests and Wire Transfer Agreements in analyzing Defendant's motion.

4

## II.     The Claims Are Precluded by the Wire Transfer Agreements

As noted above, Plaintiff is silent about the effect of the Wire Transfer Agreements on his claims and has therefore waived any argument in opposition to Defendant's motion in this regard.  *See, e.g., Azeez v. City of New York*, No. 16-cv-342, 2018 WL 4017580, at *6 (E.D.N.Y. Aug. 22, 2018) ("Ordinarily, any issues not addressed in an opposition brief are deemed abandoned by the party opposing the motion."); *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 21-cv-7513, 2023 WL 6594885, at *8 (E.D.N.Y. Aug. 25, 2023) (holding that plaintiff's failure to address an argument in opposition to defendants' motion to dismiss "amounts to a concession of th[e] argument").  Notwithstanding this procedural forfeiture, the Court agrees with Defendant that the agreements control here and that there is no question that Defendant complied with the terms of the agreements and cannot be liable for how it executed Plaintiff's instructions to wire funds to OTO and Inversiones.  The agreements are also clear that Chase begins to process the wire transfer request on the same business day the request is received, *see* ECF No. 15-3 (Exhibit 1) ¶ 3(a), and that a request cannot be cancelled after that processing begins, *id*. ¶ 3(b).

Because there is no question that Chase complied fully with the terms of the Wire Transfer Agreements, and Plaintiff concedes as much, Plaintiff is bound by his contractual obligations and cannot do an end run around those agreements by concocting a duty of care that does not exist here.  *See*, *e.g.*, *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-cv-5487, 2020 WL 2216661, at *5 (S.D.N.Y. May 7, 2020) (holding that even if a party were able to establish the elements of a tort, that party could not "overcome a contractual limitation on liability" in a deposit account agreement to which both parties agreed); *ReAmerica, S.A. v. Wells Fargo Bank Int'l,* No. 04-cv-5233, 2008 WL 7811571, at *4 (S.D.N.Y. Mar. 18, 2008), *aff'd*, 577

5

F.3d 102 (2d Cir. 2009) (enforcing the provisions of a wire transfer agreement executed by the plaintiff); *Perlberger Law Associates, P.C. v. Wells Fargo Bank, N.A.*, No. 21-cv-2287, 2022 WL 2819136, at *6 (E.D. Pa. July 19, 2022) (finding that the wire transfer agreement "governed the terms of the parties' relationship").

Although Plaintiff fails to address the contract argument, he appears generally to argue that he is not challenging the way Chase executed the wire transfers. ECF No. 15-5 at 2–3. In an effort to bypass the strictures of the contracts, and the U.C.C., Plaintiff notes that "the Complaint makes no allegation that the Defendant should never have funded the OTO or Inversiones accounts in November 2021." *Id*. at 3. Instead, he argues that because "Chase was put on notice that the Plaintiff was the victim of a scam related to the Transfers, creating reasonable doubt concerning the right of the beneficiaries to payment," Chase "should never have released funds to the beneficiaries . . . after learning of the fraud against the Plaintiff." *Id*. at 3. In effect, what Plaintiff is really arguing is that Chase had an extracontractual[4] duty to cancel the wire transfers belatedly once it was informed by Plaintiff that he had been the victim of a fraud. Plaintiff, however, fails to cite any authority that supports his position that a bank has a duty to somehow recoup funds for the benefit of a sender customer where there was no effort by that customer timely to cancel a duly authorized wire transfer and where, as here, there is no allegation that Chase had the authority[5] to seize funds that were otherwise properly deposited in

---

[4]   The Wire Transfer Agreements are clear that Chase is "only responsible for performing the services specified in this Agreement." ECF No. 15-3 at ¶ 10.

[5]   Notably, there is no allegation that Plaintiff ever provided Chase with any sort of legal process requiring Chase to freeze assets in the account of either OTO or Inversiones. In fact, as the beneficiary bank of OTO and Inversiones, Chase was under a separate duty to make payments to the wire transfer beneficiaries. *See* U.C.C. § 4-A-404(a) ("if a beneficiary's bank accepts a payment order, the bank is obliged to pay the amount of the order to the beneficiary of the order"). Therefore, after Chase processed the wire transfers and credited the accounts of the

the accounts of the wire transfer beneficiaries.

Plaintiff is asking the Court to find, in effect, that a bank that receives an authorized wire transfer instruction and follows that instruction precisely, but learns a month later from the customer that he had been tricked by a third-party to wire the funds, can be liable for executing the instructions.  Such a farfetched standard would toss bank payment systems into chaos because the risk of loss from Plaintiff's own actions (or inactions) would be unreasonably shifted to the bank.  That is not what the contracts here provide for, and, as discussed below, is certainly not what the drafters of the U.C.C. had in mind when they drafted Article 4-A.

### III. Overview of U.C.C. Article 4-A

"Article 4-A of the U.C.C. governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998).  Because "attempts to define rights and obligations in funds transfers by general principles or by analogy to rights and obligations in negotiable instrument law or the law of check collection have not been satisfactory," Article 4-A was adopted.  U.C.C. § 4-A-102, Official Cmt.  Notably, the drafters of Article 4-A "use[d] precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles."  U.C.C. § 4-A-102, Official Cmt.

---

beneficiaries, it was under no obligation to take any further action with respect to the beneficiary accounts unless Chase had been served with legal process requiring it to freeze the assets in those accounts.  *See* U.C.C. § 4-A-502(c)(2); *see also Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1110 (S.D.N.Y. 1996) ("no allegation [beneficiary bank] was served with any creditor process, and therefore [bank] was entitled to make the funds available to [beneficiary]"). Indeed, even if there had been a legal means to freeze the accounts of OTO and Inversiones, which Plaintiff does not claim there was, Plaintiff has nevertheless failed to allege any facts suggesting that at the time he provided notice, about a month after the wire transfers had been executed, there were any funds to freeze in the accounts of either beneficiary.

7

The precision employed by the drafters is reflected in the definitions provided in Article 4-A. *See id.* §§ 4-A-103–105. A "payment order" is defined as "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." *Id.* § 4-A-103(1)(a). In turn, a "sender" is defined as "the person giving the instruction to the receiving bank," *id.* § 4-A-103(1)(e), and the "receiving bank" is defined as "the bank to which sender's instruction is addressed," *id.* § 4-A-103(1)(d). A "customer," however, is defined as "a person, including a bank, having an account with a bank or from whom a bank has agreed to receive payment orders." *Id.* § 4-A-105(1)(c). Which party bears the risk of loss for a fraudulent wire transfer is also determined by Article 4-A. Section 4-A-204(1)(a) provides that "[i]f a receiving bank accepts a payment order issued in the name of its customer as sender which is [ ] not authorized and not effective as the order of the customer under Section 4-A-202 . . . the bank shall refund any payment of the payment order received from the customer." U.C.C. § 4-A-201(a). Therefore, for the bank's refund obligations to be triggered under Section 4-A-204(1)(a), the payment order must be neither authorized nor effective. If the payment order is authorized or effective, the bank bears no refund obligation.

## IV.  The U.C.C. Precludes Plaintiff's Negligence Claims

Here, as noted above, there is no question that Plaintiff authorized the wire transfers. *See supra* n.3. Moreover, as alleged in the Complaint, there is no question that: (i) Plaintiff is the "sender" of the "payment order" and a "customer" of Chase; (ii) Chase is the "receiving bank" of that order; (iii) OTO and Inversiones are each a "beneficiary" of an authorized "payment order"; and (iv) Chase is also the "beneficiary bank" for those payment orders because OTO and Inversiones held accounts at Chase. Plaintiff does not dispute that this was the structure of the

8

two wire transfers. Instead, he argues that, because the wire transfers were authorized, the fact "that the Defendant fulfilled its obligations under the NYUCC . . . bears no weight to the claims at hand." ECF No. 15-5 at 4. The Court disagrees. In effect, Plaintiff is arguing that because Chase faithfully executed the authorized wire instructions it should be held to a higher standard than what the U.C.C. requires because it "should never have released the funds to the beneficiaries of those accounts after learning of the fraud against the Plaintiff." ECF No. 15-5 at 3. This argument finds no support in the law, and Plaintiff certainly has not pointed the Court to any such authority.

Defendant contends that the only two claims asserted in the Complaint – negligence and gross negligence – are preempted by Article 4-A. Because Article 4-A sets forth who bears the loss when an authorized transaction is made that the sender later attempts to rescind, the provisions "represent a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." U.C.C. § 4-A-102, Official Cmt.

The Second Circuit has interpreted this language to "preclude common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4-A." *Grain Traders*, 160 F.3d at 103. However, not all common law claims "are per se inconsistent with this regime." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010). In evaluating whether a claim is preempted "[t]he critical inquiry is whether the provisions protect against the type of underlying injury or misconduct alleged in a claim." *Id*. at 89–90. To the extent that the Plaintiff's brief suggests it is premature to rule on

9

preemption, *see* ECF No. 15-5 at 3, the Court disagrees. Courts in this Circuit have decided that claims were preempted at the motion to dismiss stage. *See, e.g.*, *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.,* 215 F. Supp. 3d 302, 306 (S.D.N.Y. 2016) (granting defendant's motion to dismiss plaintiff's negligence claim because the claim was precluded by U.C.C. Article 4-A); *123RF LLC v. HSBC Bank USA, N.A.*, No. 21-cv-8519, 2023 WL 2611632, at *6–8 (S.D.N.Y. Mar. 23, 2023) (finding at the motion to dismiss stage that a plaintiff's negligence, gross negligence, and breach of contract claims were preempted by U.C.C. Article 4-A).

Consistent with these principles, the negligence and gross negligence claims here are preempted by Article 4-A. Indeed, even in situations more egregious than here, for example where a bank honored an unauthorized wire transfer, courts in this Circuit have found that claims that defendant "violated its duty of care by negligently honoring" unauthorized transfers, "fall[] entirely within the coverage of [Article 4-A], which creates a comprehensive risk allocation for unauthorized funds transfers," and are thus preempted. *Banco del Austro*, 215 F. Supp. 3d at 306–307; *see also Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 236 (S.D.N.Y. 2011) (finding that plaintiff's breach of contract and gross negligence claims were preempted by U.C.C. Article 4-A in a case where a former trustee was able to misappropriate funds from a trust, in part because the bank's conduct was arguably inconsistent with its own know-your-client policies). That reasoning applies with equal, if not greater, force here where there is no allegation that Defendant did anything improper, such as accepting an unauthorized payment order, in how it executed the wire transfers.

Plaintiff attempts to argue around this reasoning by claiming that he is not challenging the propriety of how Chase handled the execution of the wire transfers themselves, and therefore is not claiming that the wire transfers were unauthorized. ECF No. 15-5 at 3 ("Plaintiff does not

allege that the Defendant refused to comply with his instructions"); *id*. at 4 ("Plaintiff concedes that the Wire Transfers were authorized in November 2021."). Instead, Plaintiff claims that Chase's tortious misconduct is that it released the funds to the beneficiaries after being put on notice of the alleged third-party fraud one month after the funds had been transferred.[6] *Id*. at 3. But this is simply another way of saying that Defendant should have canceled the wire transfers upon learning of the fraud by recovering the wire amounts from the beneficiaries' accounts in order to revert to the status quo ante. This is no different than had Plaintiff attempted to cancel the transactions back in November 2021 after Chase had begun to process the orders. In other words, Plaintiff is complaining about conduct that is squarely within the ambit of Article 4-A. *See, e.g., Fischer & Mandrell LLP v. Citibank, N.A.*, No. 09-cv-6916, 2010 WL 2484205, at *7–*8 (S.D.N.Y. May 27, 2010), *aff'd*, 632 F.3d 793 (2d Cir. 2011) (finding that a negligence claim brought by a plaintiff who authorized a wire transfer and then attempted to cancel it after learning that the check providing the funds for the transfer was forged, was preempted by Article 4-A); *Phil & Kathy's v. Safra Nat. Bank of New York*, 595 F. Supp. 2d 330, 332–33 (S.D.N.Y. 2009) (holding that claims brought by a plaintiff who authorized two wire transfers to an account at defendant bank before arguing that one of the orders should have been cancelled, were preempted by Article 4-A). To hold otherwise would have the effect of creating a "buyer's remorse" basis for cancellation of wire transfers at any time after execution, which would be

---

[6] Plaintiff also alleges that Chase should be liable because a Chase employee told Plaintiff that the beneficiaries' accounts would be frozen pending the investigation. ECF No. 15-5 at 5. Even accepting as true Plaintiff's allegation that a Chase employee told him the bank would freeze the beneficiary accounts, Plaintiff has failed to allege that there were any funds in either account to freeze at the time he notified Chase of the fraud, about a month after the transfers had been executed. Plaintiff has not alleged that he would have recovered the wired funds if the accounts had been frozen, making his argument that he "assume[d] Chase had control over [the wired] funds" illogical. *Id.*

11

inconsistent with the goals of Article 4-A because it would lead to tremendous uncertainty by undermining the finality of financial transactions. As the New York Court of Appeals has observed, the New York U.C.C. "has the objective of promoting certainty and predictability in commercial transactions." *Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 74 N.Y.2d 340, 349, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989) (noting as well that "the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution").[7]

### V. The Court Declines to Grant Plaintiff Leave to Amend

Plaintiff does not seek permission to amend his Complaint. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff leave to amend. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

---

[7] Given the Court's holding that the negligence and gross negligence claims are precluded both by the Wire Transfer Agreements and by the U.C.C., the Court does not need to reach Defendant's additional arguments that Plaintiff failed to state a claim because the banking relationship with Plaintiff was not a fiduciary relationship, *see* ECF No. 15-1 at 14–15, or that these claims are barred by the economic loss doctrine, *id*. at 17.

As an initial matter, granting Plaintiff leave to amend at this stage in the proceedings would unduly prejudice Defendant. Defendant filed a pre-motion letter on January 13, 2023, that previewed for Plaintiff the grounds on which it intended to move to dismiss his Complaint. ECF No. 5. Plaintiff filed a letter in response but did not indicate that he wished to amend his Complaint in response to the arguments raised by Defendant in its pre-motion letter. ECF No. 8. Thereafter, the Court issued a scheduling order for briefing the motion to dismiss. ECF Text Order, January 24, 2023. On February 27, 2023, the parties filed a case management plan that set a July 31, 2023, deadline for motions to amend pleadings, *see* ECF No. 12, which the Court approved as its Rule 16(b) scheduling order on March 10, 2023, *see* ECF Text Order, March 10, 2023. On April 26, 2023, the parties moved jointly for a stay of discovery pending the resolution of the motion to dismiss. ECF No. 17. On May 4, 2023, the Court granted the request in part, but specifically noted in its order that:

> The Court adjourns *sine die* the remaining deadlines in its scheduling order, except that the Court does not adjourn the deadline requiring the parties to move to join new parties or to amend their pleadings on or before July 31, 2023. If the parties, after exchanging the discovery described above, conclude that they need additional time to decide whether they want to add new parties or to amend their pleadings, they must file a separate motion to adjourn that deadline and provide good cause for the adjournment.

ECF No. 18 at 2. The amendment deadline passed without Plaintiff seeking leave to amend, and Plaintiff's opposition brief is silent about why he failed to do so and, in any event, does not seek leave to amend.

Beyond the undue prejudice to Defendant, leave to amend would be futile because, even if Plaintiff could amend to add claims under the U.C.C. or for breach of contract, those claims would fail for the reasons set forth above. Additionally, given the concessions already made in the Complaint and the opposition brief about the manner in which Chase executed the transfers

and the fact that the transfers were authorized, even if Plaintiff were able to allege new facts about the execution of the transfers, for the reasons noted above those allegations would not be sufficient to survive a motion to dismiss.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss. ECF No. 15-1. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

 */s/ Hector Gonzalez*        .<br>
HECTOR GONZALEZ<br>
United States District Judge

Dated: Brooklyn, New York
       January 9, 2024